# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**NETJETS AVIATION, INC.,**

      **Plaintiff,**

      v.

**NETJETS ASSOCIATION OF SHARED AIRCRAFT PILOTS,**

      **Defendant.**

Case No. 2:17-MC-00038-GCS
JUDGE GEORGE C. SMITH
Magistrate Judge Jolson

## OPINION AND ORDER

This matter is before the Court on a Motion of NetJets Aviation, Inc. to Compel Compliance with Subpoena. (Doc. 1). For the reasons that follow, the Motion is **GRANTED**.

## I.    BACKGROUND

NetJets Aviation, Inc. ("NetJets") commenced this miscellaneous case on June 29, 2017, by filing a Motion to Compel NetJets Association of Shared Aircraft Pilots ("NJASAP") to produce documents in response to a subpoena served on May 3, 2017. (Doc. 1 at 1). The underlying litigation is *Ameer Siddiqui v. NetJets Aviation, Inc.*, Case No. 1:16-cv-23924, pending in the United States District Court for the Southern District of Florida (the "*Siddiqui* litigation"). (*Id.* at 3). The plaintiff in the *Siddiqui* litigation is a Muslim of Pakistani decent who alleges that he was subjected to religious, racial, ethnic, and age harassment, discrimination, and retaliation while employed as a pilot for NetJets. (Doc. 1-1, PAGEID #: 21–22). The plaintiff was a member of NJASAP, a union which filed a grievance on his behalf, alleging violations of the Collective Bargaining Agreement ("CBA"). (*Id.*, PAGEID #: 24). NJASAP is not a party to the *Siddiqui* litigation. (*See* Doc. 1 at 3; Doc. 4 at 1).

The subpoena NetJets served on NJASAP in connection with the *Siddiqui* litigation commanded NJASAP to produce:

> Request No. 1: Copies of any and all postings to [NJASAP's] Pilot Message Board [made] by Ameer Siddiqui.
>
> Request No. 2: Copies of any and all postings to [NJASAP's] Pilot Message Board made by anyone relating to or about Ameer Siddiqui.
>
> Request No. 3: Copies of any and all documents submitted to or received from, and all communications with, the Council on American-Islamic Relations ("CAIR") (including CAIR Florida, Inc.) related to Ameer Siddiqui.
>
> Request No. 4: Copies of any and all documents submitted to or received from, and all communications with, Ameer Siddiqui relating to allegations that [NetJets] discriminated against Mr. Siddiqui.
>
> Request No. 5: Copies of any and all documents submitted to or received from, and all communications with, any agent for Ameer Siddiqui (including attorneys) relating to allegations that [NetJets] discriminated against Mr. Siddiqui.

(*Id.*, PAGEID #: 19). NJASAP makes a number of arguments concerning these requests, including that: they are an improper attempt to circumvent the CBA; they seek irrelevant information and are not proportional to the needs of the case; they are unduly burdensome and seek information available from a party; and the Railway Labor Act ("RLA"), the union-union member privilege, the attorney-client privilege, the work-product doctrine, and the First Amendment associational privilege protect the information from disclosure.

After efforts to meet and confer on the subpoena and objections were unsuccessful (*see id.*, PAGEID #: 49, 52), NetJets filed the Motion to Compel Compliance with the Subpoena (*see* Doc. 1). That Motion is now ripe for review. (Doc. 4 (opposition); Doc. 5 (reply)).

II.  **STANDARD OF REVIEW**

Under Rule 45 of the Federal Rules of Civil Procedure, parties may command a non-party to produce documents. Fed. R. Civ. P. 45(a)(1)(D). Rule 45 further provides that "[o]n

timely motion, the court for the district where compliance is required must quash or modify a subpoena that . . . fails to allow a reasonable time to comply; . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies; or subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A). Further, "the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26." *Hendricks v. Total Quality Logistics*, LLC, 275 F.R.D. 251, 253 (S.D. Ohio 2011) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . .").

## III. DISCUSSION

### A. Whether the Subpoena is Designed to Circumvent the CBA

As an initial matter, NJASAP objects to the subpoena on the grounds that it is an attempt to circumvent the CBA. (Doc. 4 at 5). NJASAP explains that the grievance it filed against NetJets on behalf of Mr. Siddiqui has been and will be arbitrated on August 8 and 17, 2017. (*Id.*). NJASAP states that, if it is compelled to produce information responsive to the subpoena, the information "is likely to be used in the arbitration between [NetJets] and NJASAP." (*Id.*). Quoting *Stephens v. Norfolk and W. Ry. Co.*, 792 F.2d 576, 580 (6th Cir. 1986), NJASAP claims that because this matter is "inextricably intertwined" with the "grievance machinery of the [CBA] and the RLA," it should fall within the exclusive jurisdiction of the arbitrator and not this Court. (*Id.* at 6).

The Sixth Circuit in *Stephens* found that the complaint constituted a "minor dispute" that arose out of the interpretation or application of the CBA. *Stephens*, 792 F.2d at 580. For that reason, it held that the dispute was subject to the primary and exclusive jurisdiction of National Railroad Adjustment Board. *Id.* In contrast, the *Siddiqui* litigation is a separate action, not a

3

minor dispute arising out of the interpretation or application of the CBA. Moreover, there is no support for NJASAP's position that NetJets is seeking the discovery in the *Siddiqui* litigation—an action it did not commence—to improve its position in the arbitration. Based on the foregoing, NJASAP's desire to avoid discovery on this basis is without merit.

> **B.** **Whether the Information Sought is Relevant and Proportional to the Needs of this Case**

Rule 26(b) of the Federal Rules of Civil Procedure allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Here, NJASAP argues that "[t]he documents requested are irrelevant to the [*Siddiqui* litigation], and the needs of [NetJets], if any, for the documents requested is disproportionate to the chilling effect that disclosure would have on the rights of members of NJASAP…." (Doc. 4 at 9). This Court disagrees.

As one court explained, the "overall purpose of discovery under the Federal Rules is to require the disclosure of all relevant information, so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts, and therefore embody a fair and just result." *Diamond Car Care, LLC v. Scottsdale Ins. Co.*, No. 16-cv-20813, 2016 WL 8678556, at *1 (S.D. Fla. Dec. 19, 2016) (quotations and citation omitted). Further, the proportionality analysis examines the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). NetJets does not bear the burden of addressing all of the proportionality factors, and NJASAP may not refuse discovery simply by making a boilerplate objection that the information requested is not proportional. *See* Advisory Committee Notes to December 1, 2015 amendments.

According to NetJets, the relevancy of the requested information is "easy to see:"

> For example, if Mr. Siddiqui or a fellow pilot commented regarding statements that Mr. Siddiqui later denied making, it would support NetJets' assertion that Mr. Siddiqui was appropriately terminated for lying. Likewise, if Mr. Siddiqui or a fellow crewmember commented regarding inappropriate statements by Mr. Siddiqui, it would support NetJets' termination of Mr. Siddiqui and cast doubt on his discrimination arguments. Postings by Mr. Siddiqui may also conflict with allegations in the complaint or sworn testimony in his deposition, which would be relevant to his credibility and used for impeachment at trial.

(Doc. 5 at 4). However, the Court need not speculate because it has conducted an *in camera* review of the documents at issue. (*See* Doc. 3). Based upon that review, the Court finds, in its discretion, that the documents at issue are relevant and proportional to the needs of this case. *See Marsden v. Nationwide Biweekly Admin.*, No. 3:14cv399, 2016 WL 471364, at *1 (S.D. Ohio Feb. 8, 2016) (noting that the "court has broad discretion in determining the proper scope of discovery" and that "discovery under the Federal Rules of Civil Procedure is traditionally quite broad"). Thus, NJASAP's arguments that the subpoena seeks irrelevant information and is not proportional to the needs of this case are without merit.

   **C. Whether the Subpoena is Unduly Burdensome and the Information Should be Produced by Mr. Siddiqui**

NJASAP also argues that the subpoena subjects it to undue burden. However, as NetJets notes, "NJASAP has made no showing of why it would be unduly burdensome to comply, such as the hours it would require, the dollars it would cost, or the inconvenience it would pose." (Doc. 5 at 7). Indeed, NJASAP has already gathered the relevant documents, which are not significant in number, and submitted them for *in camera* inspection. (*See* Doc. 3). Consequently, NJASAP fails to demonstrate undue burden. *See, e.g.*, *Anderson v. Old Nat'l Bancorp*, No. 5:02-cv-324, 2010 WL 5463397, at *2 (W.D. Ky. Dec. 29, 2010) (finding insufficient evidence of undue burden, where only vague, unsupported claim was made and "[n]o

detail [was] offered as to the number of documents … , the costs required to prepare the information, or the time necessary to comply").

NJASAP's related argument that NetJets should have sought the information from Mr. Siddiqui is likewise without merit. Simply alleging that the information is obtainable from another source generally does not excuse compliance with a subpoena. *See, e.g.*, *id.* at *6–7; *cf. Hina v. Glass Container Corp.*, No. 2:05-cv-008, 2008 WL 2201979, at *4 (S.D. Ohio May 23, 2008) (dismissing "conclusory argument" that "the discovery sought may be obtained from other sources"). And although there is support for refusing to impose the burden of producing documents on a non-party when they are available to a party in certain circumstances, *see In re CareSource Mgmt. Grp.*, 289 F.R.D. 251, 252 (S.D. Ohio Jan. 3, 2013), NetJets explains that it has requested the information from Mr. Siddiqui to no avail. (Doc. 5 at 6). The evidence supports this assertion. (*See, e.g.*, Doc. 5-1, PAGEID #: 98 (response to request no. 22, stating that "any responsive non-privileged documents are in the possession of [NJASAP]"); *id.*, PAGEID #: 99 (responses to request nos. 27, 28, stating that Mr. Siddiqui no longer has access to the message board)). Based on the foregoing, NJASAP's argument that Mr. Siddiqui should produce the information fails.

> D. **Whether the RLA or the Union-Union Member Privilege Protects Against Disclosure**

Next, NJASAP argues that the RLA protects against disclosure. Specifically, NJASAP argues that "[s]ections 1a and 2, Fourth, of the RLA protect employees' rights to associate and to participate in union activity." (Doc. 4 at 6). Based on its assertion that production of the discovery "will have the tendency to chill the protected activities of NJASAP and its members," NJASAP claims it must be denied. (*Id.*). NJASAP also argues that the request for discovery is

an improper "attempt at surveillance of and/or eavesdropping on the activities of the members of NJASAP and NJASAP." (*Id*.).

This Court has no basis to conclude that NetJets seeks the requested discovery in pursuit of improper surveillance or eavesdropping. Rather, this Court has determined already that the information sought is relevant and proportional to needs of the *Siddiqui* litigation. Further, NJASAP points to no case law to support its assertion that discovery should be precluded under the RLA because of a chilling effect on union members. Absent such case law, the Court finds this argument to be without merit.

Similarly, NJASAP offers no binding case law to support its assertion that a union-union member privilege exists and protects against disclosure. (*See* Doc. 4 at 12 (acknowledging that neither "the Sixth Circuit, nor any court in the Sixth Circuit, has addressed the union-union member privilege")). NJASAP relies primarily on *Bell v. Village of Streamwood*, 806 F. Supp. 2d 1052, 1055–56 (N.D. Ill. 2011), a non-binding decision which considered whether to expand the federal common law to include employee-union communications already protected by Illinois statute. As NetJets explains, there is no such state statute here, and the vast majority of courts to consider this issue have rejected *Bell*'s ultimate holding that such a privilege exists. *Id*. at 1056; *see, e.g.*, *Jenkins v. Bartlett*, 487 F.3d 482, 491 n.6 (7th Cir. 2007) ("We do not suggest that an independent privilege exists for communications between an individual and his union representative."); *Boyer v. Rock Twp. Ambulance Dist.*, No. 4:10-cv-02344, 2012 WL 1033007, at *3 (E.D. Mo. Mar. 27, 2012) ("[T]here is no precedent from the Eighth Circuit or this District Court finding a union member-union representative privilege, and the Court is not inclined to find that such a privilege exists absent such authority. Rather the Court will follow the weight of federal authority that no such privilege exists."); *Parra v. Bashas' Inc.*, No. 02-591, 2003 WL

25781409, at *4–5 (D. Ariz. Oct. 2, 2003) (denying motion to quash a subpoena for union-employee communications where "neither the Union's briefings, nor [the court's] own research, has found any authority for the existence of a privilege for union-employee communications"); *In re Grand Jury Subpoenas Dated January 20, 1998*, 995 F. Supp. 332, 334–37 (E.D.N.Y. 1998) (finding no authority to support a union official-union member privilege and "declin[ing] to recognize a common law privilege shielding conversations between union officials and members on matters of union concern").

Although this Court is aware that Rule 501 allows courts to create new privileges "in light of reason and experience," the Court finds no need to do so here—where many courts have considered the issue and found that a union-union member privilege does not exist. Despite NJASAP's arguments to the contrary, the union-union member privilege does not protect against disclosure.

### E. Attorney-Client Privilege and Work-Product Doctrine

In its reply brief, NetJets states that it no longer seeks to compel production of documents NJASAP contends are protected by the attorney-client privilege and work-product doctrine. Consequently, the Court need not address this issue.

### F. Whether the First Amendment Protects Against Disclosure

Finally, NJASAP also asserts that the First Amendment associational privilege prohibits the disclosure of the requested information. (Doc. 4 at 10). The First Amendment indeed provides for a qualified privilege preventing the disclosure of certain associational information. *NAACP v. State of Ala.*, 357 U.S. 449, 462 (1958). For the privilege to apply, NJASAP must demonstrate an objectively reasonable probability that disclosure "will chill associational rights, *i.e.* that disclosure will deter membership due to fears of threats, harassment or reprisal from

either government officials or private parties which may affect members' physical well-being, political activities or economic interests." *Id*. at 462–63. If NJASAP makes such a showing, NetJets may overcome the privilege by showing a compelling need for the information. *Id*.

Here, NJASAP asserts that producing the requested information would allow NetJets to discover which pilots are NJASAP members. (Doc. 4 at 11). NJASAP explains that not all pilots are members; rather, the pilots have discretion under federal labor law to elect to be a NJASAP member or a fee payer. (*Id*.). Only members are entitled to use the message board. (*Id*.). NJASAP likens the message board to a "virtual union hall" and claims that its members would reasonably expect it to be private. (*Id*.). NJASAP adds that "there is a real possibility that some of the posts may be considered dissident by [NetJets]." (*Id*.). For these reasons, NJASAP argues that the privilege applies.

This Court agrees that revealing the identities of the individuals posting on the message board may chill associational rights and deter membership due to fears of reprisal. However, producing the documents with all identifying information redacted removes the chilling effect and potential for reprisals. *See, e.g.*, *Patterson v. Heartland Indus. P'ship*, 225 F.R.D. 204, 206 (N.D. Ohio 2004) (finding that the First Amendment associational privilege did not apply to documents that redacted the names of union supporters). However, Mr. Siddiqui's name or identifying information would not need redaction because he is admittedly a union member and the plaintiff in the underlying litigation. *See Cason v. Federated Life Ins. Co.*, 510 F. App'x 663, 665 (9th Cir. 2013).

The Court has reviewed the production *in camera* and finds that redacting the identifying information of union members who posted on the message board would not be unduly

burdensome. Thus, NJASAP must produce the message board documents with all identifying information redacted, except Mr. Siddiqui's name or identifying information.

## IV. CONCLUSION

For the reasons set forth above, NJASAP's Motion to Compel Compliance with Subpoena is **GRANTED**. (Doc. 1). However, NJASAP must produce the message board documents with all identifying information redacted, except Mr. Siddiqui's name or identifying information.

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); Eastern Division Order No. 14-01, pt. IV(C)(3)(a). The motion must specifically designate the order or part in question and the basis for any objection. Responses to objections are due fourteen days after objections are filed. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law. This order is in full force and effect even if a motion for reconsideration has been filed unless it is stayed by either the Magistrate Judge or District Judge. S.D. Ohio L.R. 72.3.

    IT IS SO ORDERED.

Date: August 15, 2017          /s/ Kimberly A. Jolson
                                                               KIMBERLY A. JOLSON
                                                               UNITED STATES MAGISTRATE JUDGE